## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| THOMAS MICHAEL HOBSON, | ) | |
| as Administrator of the Estate of | ) | |
| Jonathan Wayne Tubbs, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 09-S-1481-S |
| | ) | |
| LIFE INSURANCE COMPANY | ) | |
| OF NORTH AMERICAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the court on a report and recommendation from United States Magistrate Judge Robert R. Armstrong.[1]  On July 7, 2011, Magistrate Judge Armstrong recommended that defendant Angel Wade's motion for summary judgment[2] be granted.[3]  Plaintiffs Lila Smith and her two minor children, J.T.T. and D.K.T., filed an objection to the magistrate judge's recommendation on July 21.  The case concerns the proceeds of a life insurance policy issued by Life Insurance Company of North America ("LINA") on the life of Jonathan Wayne Tubbs,

---

[1] Doc. no. 37.  As will be explained in part II(B), *infra*, Magistrate Judge Armstrong entered another report and recommendation, doc. no. 44, which reaffirmed his conclusions in the first recommendation.

[2] Doc. no. 30.

[3] Doc. no. 37.

deceased.  The parties to this suit assert competing claims to the policy proceeds.  As the policy was provided by the decedent's employer, the claims arise under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*  Upon *de novo* consideration of the magistrate judge's recommendation, the court adopts the magistrate judge's recommendation and concludes that Wade's motion for summary judgment is due to be granted.

## I.  LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).[4]  In other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "A genuine issue of material fact 'exists only if sufficient evidence is presented

---

[4] Rule 56 was amended, effective December 1, 2010, in conjunction with a general overhaul of the Federal Rules of Civil Procedure.  The Advisory Committee was careful to note, however, that the changes "will not affect continuing development of the decisional law construing and applying these phrases." Adv. Comm. Notes to Fed. R. Civ. P. 56 (2010 Amends.).  Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

favoring the nonmoving party for a jury to return a verdict for that party.'" *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999) (quoting *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1284-85 (11th Cir. 1997)).

"In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983). Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921); s*ee also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) (asking "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

3

## II.  BACKGROUND

**A.     Factual Background**

The decedent, Jonathan Tubbs, was married to plaintiff Lila Smith until their

divorce on March 13, 2000.[5]  Together they had two children, J.T.T. and D.K.T., who

are also plaintiffs in this action.[6]  The decree finalizing the divorce between Jonathan

Tubbs and Lila Smith contained the following provision:

> **LIFE INSURANCE.**  Each party will continue to keep whatever life
> insurance they currently have, with the two children as the named
> irrevocable beneficiaries.  Neither party may encumber, mortgage,
> pledge, pawn, borrow against, cancel or reduce insurance benefits
> without 30 days prior written notification to the other party.[7]

At the time of the divorce, Jonathan Tubbs was the owner of a Group Life Insurance

policy issued by LINA and serviced by CIGNA Group Insurance.[8]  There was at least

$45,000 in insurance coverage for the benefit of Lila Smith, consisting of the initial

amount of $15,000 in group insurance coverage, provided free of charge by Jonathan

Tubbs's employer, and an additional purchase of $30,000.[9]  Lila Smith was the sole

---

[5] Doc. no. 31 (Response Brief of Lila Smith in Opposition to Motion for Summary
Judgment), at Ex. 1 (Affidavit of Lila Smith) ¶ 3.

[6] *See id.* at Ex. 1 ¶ 1.

[7] *Id.* at Ex. 1, at Ex. A (Final Decree of Divorce and Agreement in Contemplation of Divorce,
Lila Smith), at 4.

[8] *See id.* at Ex. 1 ¶ 6.

[9] *Id.*

4

beneficiary under the policy at that time.[10]

On September 5, 2005, Jonathan Tubbs and defendant Angel Wade were married.[11]   Their marriage was dissolved by a divorce decree on November 19, 2008.[12]  Prior to the divorce being finalized, on October 15, 2008, Wade and Jonathan Tubbs entered into an "Agreement in Contemplation of Divorce."[13]  One of the terms of that agreement was that "[t]here are currently life insurance policies in effect on both parties.  The parties agree that all such policies shall be canceled within thirty (30) days of" October 15.[14]  Neither the agreement nor the divorce decree contained language purporting to effect cancellation of the policies.  On January 16, 2009, Jonathan Tubbs executed a Term Life Insurance Change Form, indicating that he intended to cancel coverage of Angel Wade.[15]  The parties presented no evidence showing that he submitted the form to the insurance company or his employer, although Donna Tubbs asserts that he submitted the form to his group benefit administrator.[16]  On the form, Jonathan Tubbs indicated that the effective date of the

---

[10] *Id.* at Ex. 1, at Ex. B (Group Insurance Form, May 14, 1998).

[11] Doc. no. 32-1 (Final Judgment of Divorce and Agreement in Contemplation of Divorce, Angel Wade), at 3.

[12] *Id.* at 2.

[13] *Id.* at 6.

[14] *Id.* at 5.

[15] *See* doc. no. 32-2 (Term Life Insurance Change Form).

[16] Donna Tubbs cited only the *complaint* in support of this fact.  *See* doc. no. 32 (Response Brief of Donna Tubbs in Opposition to Motion for Summary Judgment), at 2.  Wade did not

cancellation was to be February 1, 2009.[17]

On March 27, 2009, Jonathan Tubbs and Donna Tubbs were married.[18] Twenty-three days later, on April 19, 2009, Jonathan Tubbs died intestate.[19]  At the time of his death, Jonathan Tubbs was still the owner of the LINA Group Life Insurance policy.  The policy had a face amount of $115,000, representing an initial policy purchase of $15,000 and a supplemental purchase of $100,000.[20]   LINA's records contained the following section:

> **Beneficiary Designation**
> Angel M. Tubbs, 4779 Grand Oak Circle, Brookwood, AL 35444, wife, 40%
> T[.] Tubbs, 20182 Calhoun Road, McCalla, AL 25111, son-child, 30%
> K[.] Tubbs, 20182 Calhoun Road, McCalla, AL 25111, son-child, 30%.[21]

Thus, although Jonathan Tubbs had agreed in his divorce agreement with Wade to cancel his insurance policy within 30 days, and despite the fact that he completed (and allegedly submitted) a Term Life Insurance Change Form intended to cancel

---

explicitly dispute this fact in her reply brief, but did characterize it as "Jonathan Wayne Tubbs' partial completion" of the form.  *See* doc. no. 34 (Reply Brief in Support of Motion for Summary Judgment), at 4.

[17] Doc. no. 32-2, at 2.

[18] This is another fact that is not supported by any *evidence*, although Wade did not dispute it in her reply brief.

[19] *See* doc. no. 30-3 (Insurance Claim Form).

[20] *See* doc. no. 30-2 (Group Insurance Form, September 25, 2005).

[21] *Id.*

coverage of Wade, Wade was still listed as a beneficiary of his policy in LINA's records at the time of his death.  The insurance policy contained the following provision:

> **Change of Beneficiary**
> The Insured may change the beneficiary at any time by giving written notice to the Employer or the Insurance Company.  The beneficiary's consent is not required for this or any other change which the Insured may make unless the designation of beneficiary is irrevocable.
>
> No change in beneficiary will take effect until the form is received by the Employer or the Insurance Company.  When this form is received, it will take effect as of the date of the form.  If the Insured dies before the form is received, the Insurance Company will not be liable for any payment that was made before receipt of the form.[22]

## B.   Procedural Background

Angel Wade submitted to LINA a claim for her portion of the insurance benefits payable under Jonathan Tubbs's policy on April 27, 2009.[23]  On July 20, 2009, plaintiffs Donna Tubbs and Thomas Hobson, the administrator of Jonathan Tubbs's estate, filed a complaint in the Circuit Court of Jefferson County, Alabama, seeking a portion of the insurance proceeds.[24]  They requested that the court exclude Wade as a beneficiary and order LINA to deposit with the court any benefits payable to beneficiaries other than the two children, to enable any potential claimants to

---

[22] Doc. no. 1-3 (Group Policy), at 195.

[23] Doc. no. 30-3, at 3.

[24] Doc. no. 1-1 (Process and Pleadings in State Court), at 10-15.

appear and prove their claims.[25]  The case was removed to federal court on July 23, 2009 on the basis of the court's federal question jurisdiction under ERISA.[26]

Lila Smith and her two minor children, J.T.T and D.K.T., filed an intervenor complaint on February 4, 2010.[27]  On March 25, 2010, LINA filed its answer and made a counterclaim in interpleader to adjudicate the competing claims of Donna Tubbs, Angel Wade, and Lila Smith and her two minor children.[28]  LINA deposited the funds representing the full proceeds of the policy, totaling $117,000, in the court registry,[29] moved to be dismissed from the case, and on October 22, 2010, was dismissed.[30]

Lila Smith and her children filed a motion for partial summary judgment on June 29, 2010, arguing that each of the children was the undisputed beneficiary of 30% of the proceeds under the plan.[31]  On October 29, 2010, the court granted partial summary judgment.[32]  On December 13, 2010, Lila Smith and her children moved the

---

[25] *Id.* at 14.

[26] Doc. no. 1 (Notice of Removal).

[27] Doc. no. 9.

[28] Doc. no. 10.

[29] Doc. no. 12 (Order Giving Notice of Deposit).  It is unclear why the amount deposited was $117,000, rather than $115,000, as listed in the policy records.

[30] Doc. no. 24 (Order Granting Motion to Dismiss).

[31] Doc. no. 14.

[32] Doc. no. 26.

court to disburse the funds, and the court entered an order of disbursement on December 14.[33]

On January 13, 2011, Angel Wade filed a motion for summary judgment, arguing that she was the rightful beneficiary of the remaining 40% of the policy proceeds.[34]  On June 6, while that motion was pending, LINA filed an intervenor complaint, seeking to deposit an additional $40,000 due under the policy to the court registry.[35]  On July 7, Magistrate Judge Armstrong recommended that Wade's motion for summary judgment be granted.[36]  On July 21, Lila Smith's minor children filed a motion to intervene or reenter the case,[37] and they, along with Lila Smith, filed an opposition to the recommendation.[38]  Also on July 21, LINA filed a motion to deposit the $40,000,[39] which was granted on August 8.[40]

On July 22, Magistrate Judge Armstrong ordered Lila Smith and her children

---

[33] Doc. no. 27 (Motion for Disbursement of Funds); doc. no. 28 (Order for Distribution of Registry Funds).

[34] Doc. no. 30.

[35] Doc. no. 36.  The additional funds were available "[d]ue to a change in the terms of" Tubbs's policy.  *Id.* ¶ 3.

[36] Doc. no. 37 (Report and Recommendation).

[37] Doc. no. 38.  The docket for the case lists the children as having been terminated on October 29, 2010, the date that partial summary judgment was granted in their favor, but none of the documents in the docket contain language dismissing them.  Regardless, the court finds that the motion to intervene or reenter is due to be granted.

[38] Doc. no. 39.

[39] Doc. no. 40.

[40] Order of August 8, 2011.

to explain the alleged factual dispute that formed the basis of their opposition to his recommendation.[41]   On August 2, they filed a response, explaining that they were each entitled to 30% of the additionally deposited $40,000.[42]   The magistrate judge entered an order recommending that they receive that 60%, and that Angel Wade receive the remaining 40%.[43]   On August 10, in response to that order, Smith filed an objection to the disbursement of funds to Wade, "upon the same grounds raised in her Opposition to the Defendant Angel Wade's Motion for Summary Judgment . . . ."[44] On August 19, the magistrate judge issued another report and recommendation, affirming his previous recommendation to grant summary judgment in favor of Angel Wade, and further recommending that Lila Smith's children be allowed to intervene or reenter the case.[45]   The case was reassigned to the undersigned for consideration of the magistrate judge's report and recommendation.   On September 28, LINA moved the court to be dismissed from the case.[46]

---

[41] Order of July 22, 2011.

[42] Doc. no. 41.

[43] Order of August 2, 2011.

[44] Doc. no. 42, at 1.

[45] Doc. no. 44.

[46] Doc. no. 47.

# III.  DISCUSSION

## A.    Claims of Lila Smith

Lila Smith is the only party to object to the magistrate judge's recommendation.[47]  The court must review *de novo* any recommendation to which a timely objection has been filed.  28 U.S.C. § 636(b)(1).  Smith argues that the language of the divorce decree between her and Jonathan Tubbs prohibited him from removing her as a beneficiary under the insurance policy.[48]  Under Alabama law, agreements and divorce decrees requiring a spouse to maintain an insurance policy for the benefit of the other spouse, or making the other spouse the irrevocable beneficiary of a life insurance policy, create an enforceable contractual obligation prohibiting the insured spouse from altering the beneficiary of the policy.  *See, e.g.*, *Downs v. Downs*, 978 So. 2d 768, 771 (Ala. Civ. App. 2007) (collecting cases).  In *Downs*, the husband and wife entered into an agreement to maintain jointly an insurance policy, each paying half of the premium.  *Id.* at 769-70.  The agreement was silent as to who would be the beneficiary of the policy.  *Id.*  At the time of the divorce, the wife was the beneficiary of the life insurance policy.  *Id.* at 770.  The

---

[47] As explained in part (B), *supra*, the magistrate actually entered two recommendations, as necessitated by the deposit of the additional funds.  Docs. no. 37, 44.  Smith timely filed an objection to the first recommendation.  Doc. no. 39.  The second recommendation served only to address the disbursement of the newly deposited funds, and the magistrate made no new findings of fact or conclusions of law.

[48] Doc. no. 31, at 4.

court held that the requirement that the parties "maintain" an existing policy, of which the wife was the beneficiary, prohibited the husband from later changing the policy's beneficiary to his second wife. *Id.* at 772-73.

Smith's reliance on *Downs* is misplaced, and her argument misconstrues the terms of the divorce decree. The decree required Jonathan Tubbs to "keep whatever life insurance [he] currently [had], *with the two children as the named irrevocable beneficiaries.*"[49]  There is no language suggesting that Tubbs was required to maintain *Smith* as a beneficiary. In *Downs*, the agreement did not specify that the wife was to be maintained as the beneficiary, but it was entirely silent as to who the beneficiary was to be. *Id.* at 769-70. Here, the agreement is not silent on that point, but it only specifies that the *children* must be beneficiaries,[50] despite the fact that at the time of the divorce, *Smith* was the named beneficiary under the policy.[51]  Smith relies solely on the language of the decree for her claim, offering no additional factual evidence. Thus, there is no issue of fact, and the language of the decree is controlling. The language of the decree creates no obligation for the maintenance of Smith as a beneficiary of the policy. Accordingly, Smith's claims are due to be dismissed as a matter of law.

---

[49] Doc. no. 31, at Ex. 1, at Ex. A, at 4.

[50] *Id.*

[51] *Id.* at Ex. 1, at Ex. B (Insurance Form).

**B.     Claims of Donna Tubbs[52]**

Donna Tubbs argues that the agreement between Jonathan Tubbs and Angel Wade prior to their divorce and the Term Life Insurance Change Form Jonathan Tubbs executed prior to his death prevent Wade from collecting the benefits of the insurance policy.[53]  Under Alabama law, the mere dissolution of a marriage does not terminate the status of one spouse as the beneficiary of an existing life insurance plan insuring the other. *Flowers v. Flowers*, 224 So. 2d 590, 596-97 (Ala. 1969) ("We will first give consideration to the holding of the trial court to the effect that the divorce decree, in and of itself, did not affect the right of Evelyn Flowers to receive the proceeds of the certificate of insurance here in question.  We agree with that holding."); *Walden v. Walden*, 686 So. 2d 345, 346 (Ala. Civ. App. 1996) ("[W]e conclude that the dissolution of the marriage had no legal effect upon the designation of the wife as the beneficiary under the husband's IRA.").  Thus, the divorce itself did not sever Wade's status as beneficiary, and Jonathan Tubbs would have had to affirmatively remove her from the policy.  The fact that the form listing Wade as a beneficiary characterized her as "wife" does not preclude her from recovering the benefits. *Slaughter v. Slaughter*, 65 So. 348, 349 (Ala. 1914) ("Where no rule of the

---

[52] Although Donna Tubbs did not file an objection to the magistrate's recommendation, the court will consider her claims *de novo*, as they concern the same interpled funds as Smith's claims.

[53] *See generally* doc. no. 32.

[policy] and no public statute restrict the beneficiary to a lawful wife, the allusion to the beneficiary in the certificate as the [insured's] wife is mere *descriptio personae*, and not a warranty to the [insurer] that she is a lawful wife.") (bracketed alterations supplied); *see also* 4 *Couch on Insurance (3d)* § 59:11 (2010) (citing, *inter alia*, *Slaughter*).

The divorce decree between Wade and Jonathan Tubbs did not, in and of itself, cancel Tubbs's policy that named Wade as a beneficiary.[54]  The agreement Wade and Tubbs executed prior to the divorce required them to cancel policies naming each other as a beneficiary.[55]  Thus, neither document actually cancelled the policy.  Donna Tubbs cites several cases from other jurisdictions holding that a property settlement agreement serves to effect a surrender of one spouse's status as beneficiary of an insurance policy held by the other.[56]  However, in each of those cases but one, the settlement agreement between the spouses contained clear language surrendering the right.  *See Baekgaard v. Carreiro*, 237 F.2d 459, 460 n.2 (9th Cir. 1956) ("The husband shall receive and be entitled to the insurance policies hereinafter listed, free and clear of any claims of the wife thereto."); *Brewer v. Brewer*, 390 S.W. 630, 630-31 (Ark. 1965) ("The detailed agreement . . . 'transferred and released any and all

---

[54] *See* doc. no. 32-1.

[55] *Id.* at 5.

[56] Doc. no. 32, at 6.

interest in' decedent's . . . life insurance policies, and went on to state after this unconditional transfer that decedent would have the right to designate beneficiaries and exclude her if he so desired."); *Phillips v. Pelton*, 461 N.E. 2d 305, 307 (Ohio 1984) ("[E]ach party hereto completely and forever releases the other from any and all rights each has, or may have — . . . As beneficiary in any life, or other type of insurance policy issued to the other."). In the remaining case cited by Donna Tubbs, the decision was based on the law of community property rights. *Dudley v. Franklin Life Ins. Co.*, 440 P.2d 363, 363 (Or. 1968) (applying California law, and holding that "an insurance contract was a form of community property and that a property settlement agreement was binding on the beneficiary named in the insurance policy"). Here, Jonathan Tubbs failed to comply with the terms of the pre-divorce agreement, but the agreement itself lacked the specific language necessary to effect a surrender of Wade's rights as a beneficiary.

Donna Tubbs also argues that Wade is not a valid beneficiary under the policy because Jonathan Tubbs intended to remove Wade from the policy. "[U]nder Alabama law, the designation of a beneficiary of a life insurance policy, including the changes thereof, are governed by the provisions of the policy itself." *Zeigler v. Cardona*, 830 F. Supp. 1395, 1398 (M.D. Ala. 1993). The insurance company may waive strict compliance with the policy, and is deemed to have waived those

15

requirements by interpleading the policy proceeds. *Id.* (citing *Whitman v. Whitman*, 142 So. 413 (Ala.1932); *McDonald v. McDonald*, 102 So. 38 (1924)). An insured's uncompleted attempt to change the beneficiary of his policy is considered effective if the insured substantially complied with the requirements to effect such a change. *Gibson v. Henderson*, 459 So. 2d 845, 847 (Ala. 1984) ("Courts will give effect to the intention of the insured by holding that a change of beneficiary has been accomplished where he has done all that he could to comply with the provisions of the policy.") (quoting 5 *Couch on Insurance (2d)* 28:65 (1960)). Donna Tubbs argues that, by completing the Term Life Insurance Change Form and submitting it to his group benefit administrator, Jonathan Tubbs substantially complied with the requirements for changing a beneficiary, and Wade cannot recover.[57]

Under the terms of Jonathan Tubbs's policy, an insured may change the beneficiary of his policy "by giving written notice to the Employer or the Insurance Company."[58] Donna Tubbs argues that by completing the Term Life Insurance Change Form and submitting it to his group benefits administrator, Jonathan Tubbs substantially complied with this requirement under the policy.[59] However, neither Donna Tubbs nor any other party has produced any *evidence* that Jonathan Tubbs

---

[57] *Id.* at 6-7.

[58] Doc. no. 1-3, at 195.

[59] Doc. no. 32, at 6-7.

actually submitted the form to the group benefits administrator.  Donna Tubbs cites only her complaint for the factual support of this statement.[60]  She offers the form itself, but does not indicate how she came into possession of it, *i.e.*, whether she found a copy in Jonathan Tubbs's possession, or whether a copy was obtained from LINA during this litigation.  Nor does Wade provide illumination.  In her briefs, she does not explicitly dispute that Jonathan Tubbs submitted the form to the group benefits administrator, although she does imply that he did not.[61]

Assuming, *arguendo*, that Jonathan Tubbs did submit the form to the group benefits administrator, there is still a flaw in Donna Tubbs's argument.  Although Donna Tubbs characterizes Jonathan Tubbs's execution of the form as "manifest[ing] a clear intent by Mr. Tubbs that Ms. Wade's rights as a beneficiary be severed,"[62] the language on the form itself indicates that by executing the form, Jonathan Tubbs was cancelling *coverage* for Wade, not changing the *beneficiary* of his policy.[63]  This crucial distinction was ignored by all of the parties.  Under the terms of the policy,

---

[60] *Id.* at 2 (citing doc. no. 1-1, at 12).

[61] Doc. no. 30-1, at 11 ("The Term Life Insurance Change Form that Plaintiffs refer to in their complaint as evidence of removal of Angel Wade as a beneficiary was, evidently, not completed or properly submitted to LINA according to LINA's records."); doc. no. 34, at 5 ("[I]t bears repeating that merely requesting a change of beneficiary form, or even completing the form without submitting it, is simply not enough to change a beneficiary under the substantial compliance standard.").

[62] Doc. no. 32, at 7.

[63] Doc. no. 32-2.

Case 2:09-cv-01481-CLS   Document 48   Filed 11/22/11   Page 18 of 22

"coverage" and "beneficiary" have distinct meanings. A covered person is the person insured.[64] A beneficiary is one who receives the proceeds of the policy upon the death of a covered (insured) person.[65] The policy allowed Jonathan Tubbs to take out life insurance for a spouse that would pay a beneficiary upon the death of the spouse.[66] The form he executed cancelled such coverage for Wade — it did *not* remove her as a beneficiary of the policy's coverage of him.

The word "beneficiary" does not appear anywhere on the form. The section Jonathan Tubbs filled out is below the heading "I WISH TO MAKE THE FOLLOWING CHANGES TO MY LIFE INSURANCE COVERAGE." The first subsection below that heading is entitled "Increase, decrease or begin coverage on the following individuals as indicated below," with spaces to fill in for the employee, spouse, and children. The inclusion of the employee as an option indicates that this section is in place to change the person insured under the policy, rather than the person(s) designated to receive the proceeds, as the employee would not typically be the beneficiary of his own life insurance policy. Moreover, the form also requires the

---

[64] *See* doc. no. 1-3, at 184 ("If an Insured is eligible to elect Spouse *coverage*, the Spouse is eligible to be *insured* . . . . If an Insured is eligible to elect Dependent Child *coverage*, the Dependent Child is eligible to be *insured* . . . .") (emphasis supplied). Although the policy has a definitions section, neither "coverage" nor "beneficiary" is included. *Id.* at 201-02.

[65] *Id.* at 194 ("Death Benefits will be paid to the Insured's named *beneficiary*, if any, at the time of payment.") (emphasis supplied).

[66] *See id.* at 184.

employee to answer "medical questions" for each person for whom he elects to increase, decrease, or begin coverage, questions that would be irrelevant to naming beneficiaries.  Tubbs left this subsection blank.[67]

Jonathan Tubbs did fill out the second subsection under the "COVERAGE" heading, labeled "Life Status Change," indicating that he was divorced.  Most importantly to this case, he filled out the third subsection, titled "Cancel coverage on the following individuals."  In that subsection, he checked a box to cancel coverage for "Spouse."  As with the "Increase, decrease or begin coverage" subsection, the other options for coverage cancellation included "Employee."[68]  The distinction between benefits and coverage explains how Jonathan Tubbs could have executed the form and submitted it to his group benefits administrator, but the beneficiaries under his policy remained unchanged.  By filling out the form he cancelled coverage; he did not change the beneficiary.

The evidentiary record before the court is sparse, and it is unclear whether Wade ever was covered under Jonathan Tubbs's insurance plan, or whether she was merely a beneficiary.  If she was only a beneficiary, then the most logical interpretation of Tubbs's execution of the Term Life Insurance Change Form would

---

[67] Doc. no. 32-2.

[68] *Id.*

19

be that he attempted to remove her from his policy as a beneficiary, but mistakenly filled out the wrong form. Assuming, *arguendo*, that such was the case, his actions still do not meet the requirements to establish intent under Alabama law. In order to prevail, Donna Tubbs must show that Jonathan Tubbs substantially complied with the requirements to change the beneficiary of the policy by doing all that he could do to comply with the terms of the policy. *Gibson*, 459 So. 2d at 847. In *Gibson*, the Alabama Supreme Court announced the substantial compliance rule and held that filling out a change in beneficiary form but leaving it in a desk for over a year, rather than submitting it, did not qualify as substantial compliance. *Id.* at 848. There is a dearth of reported Alabama cases applying the *Gibson* rule. The few examples of actions sufficient to satisfy substantial compliance include: designating the intended recipient as the "primary beneficiary" and conditioning the settlement of a lawsuit on that beneficiary being entitled to the proceeds, *Midland Nat'l Life Ins. Co. v. Turner*, No. 06-0429-BH-M, 2007 WL 2254419, at *4 (S.D. Ala. Aug. 2, 2007); and meeting with the insurance agent, requesting the change, and filling out the proper paperwork, *Zeigler*, 830 F. Supp. at 1398. Both of those cases involved actions that more clearly demonstrate intent than completing an incorrect form. Finally, it is worth noting that Jonathan Tubbs did successfully change the beneficiaries under the policy at some point, as Wade and the children, not Smith, were listed as beneficiaries in the LINA

20

records at the time of his death.[69]  Mistakenly filling out the incorrect form does not rise to the level of substantial compliance, especially when the evidence demonstrates that the insured had complied with the policy requirements to change beneficiaries in the past.

## IV.  CONCLUSIONS AND ORDERS

Having carefully reviewed all the materials in the court file, including the report and recommendation, the court is of the opinion that the magistrate judge's report is due to be, and hereby is, ADOPTED, and his recommendation is ACCEPTED.  The court EXPRESSLY FINDS that there are no genuine issues of material fact, and defendant Angel Wade is entitled to judgment as a matter of law. Accordingly, the magistrate's recommendation is ratified and affirmed, and defendant's motion for summary judgment is GRANTED.

The motion to intervene or reenter, filed by plaintiffs J.T.T. and D.K.T., is hereby GRANTED.  Plaintiffs J.T.T. and D.K.T. are each due to receive 30% of the $40,000 deposited in the court registry on August 10, 2011.  Defendant Angel Wade is entitled to receive the remainder of that amount, as well as the remainder of the initially deposited $117,000.  The court will, by separate order, instruct the clerk to

---

[69] *Compare* doc. no. 31, at Ex. 1, at Ex. B (listing as beneficiary "Lila A. Tubbs . . . 100%"), *with* doc. no. 30-2 (listing as beneficiaries "Angel M. Tubbs . . . 40%; T[.] Tubbs . . . 30%; K[.] Tubbs . . . 30%").

disburse the registry funds.   Interpleader plaintiff LINA's motion to dismiss is

DENIED as moot.

DONE this 21st day of November, 2011.

United States District Judge